589 F.2d 270
 6 O.S.H. Cas.(BNA) 2159, 1978 O.S.H.D. (CCH) P 23,217
Ray MARSHALL, Secretary of Labor, Petitioner,
v.
L. E. MYERS COMPANY and Occupational Safety and Health
Review Commission, Respondents.
 No. 77-2278.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 30, 1978.
Decided Nov. 21, 1978.*
Opinion Dec. 21, 1978.
 
 John A. Bryson, II, Washington, D. C., for petitioner.
 W. Brand Bobosky, Naperville, Ill., for respondents.
 Before CASTLE, Senior Circuit Judge, BAUER and WOOD, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Pursuant to Section 11(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 Et seq., the Secretary of Labor petitions this court to review and set aside an order of the equally divided Occupational Safety and Health Review Commission which permitted the administrative law judge's decision in favor of L. E. Myers Co. (Myers) to become the final order of the Commission.
 
 
 2
 In May 1974 in the performance of highline electrical work an experienced company journeyman, while working within the bight of the line, was hurled approximately 80 feet to his death. A line, under tension, accidentally released at high velocity. At the time the decedent and his partner had been using a "preform" grip on the line which permitted the line to be pulled to a certain tension so that other operations could be performed in stringing the line. Following the fatal accident, the Secretary, alleging that Myers committed a serious violation of the general duty clause of the Act, issued a citation and proposed a $600 penalty.[1]
 
 
 3
 After a hearing the administrative law judge vacated the citation and proposed penalty declaring that "(t)he overall evidence . . . is not persuasive that respondent violated the Act as alleged." Also as a conclusion of law the judge announced that the respondent did not violate Section 5(a)(1) of the Act. In his finding of facts he determined:
 
 
 4
 (1) (R)espondent's employees used preformed-type grips for a "clipping-in" process which were manufactured by Preform Lines Products Company. Use of the preforms for "pulling-in" was in contravention of the manufacturer's published "Application Procedures," and such use was with respondent's knowledge but did not constitute a recognized hazard.
 
 
 5
 (2) A preform-type grip which had been improperly applied failed; however, use of the grip for the "clipping-in" procedure was shown to be an acceptable practice, as safe as another recognized type grip which was available at the job site.
 
 
 6
 (3) The decision to use a particular grip (preform-type or patent-type) was within the discretion of the journeyman linemen employing same, and the respondent had reason to expect journeymen linemen to perform their work in a safe manner consistent with their knowledge and training and its safety rules which were in effect.
 
 
 7
 (4) Respondent's employee working in the bight of the angle of the line without safetying to the pole, and without use of safety belts, was in violation of respondent's safety rules.
 
 
 8
 (5) The evidence does not establish that, at the aforesaid time and place, respondent's method of operation was a recognized hazard.
 
 
 9
 The issue presented on appeal, the same one faced by the administrative law judge, is "whether the respondent failed to provide its employees with a place of employment free of recognized hazards by permitting employees to use certain equipment in a manner for which it was not specifically designed by a particular manufacturer."[2]
 
 
 10
 The general duty clause of the Act, 29 U.S.C. § 654(a)(1), requires that:
 
 
 11
 Each employer (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.
 
 
 12
 A serious violation, 29 U.S.C. § 666, exists only where there is:
 
 
 13
 substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.
 
 
 14
 Thus the Secretary shoulders the burden of proving "(1) that the employer failed to render its workplace 'free' of a hazard which was (2) recognized and (3) causing or likely to cause death or serious physical harm." National Realty and Construction Co., Inc. v. Occupational Safety and Health Review Commission, 160 U.S.App.D.C. 133, 141, 489 F.2d 1257, 1265 (1973).
 
 
 15
 Although the mere fact of a death indicates a potential for injury, the Secretary has not carried his burden with regard to the first and second elements of a violation.
 
 
 16
 The Secretary has been unable to demonstrate that Myers failed to render the worksite "free" of the hazard. "Actual occurrence of hazardous conduct is not, by itself, sufficient evidence of a violation, even when the conduct has led to injury. The record must additionally indicate that demonstrably feasible measures would have materially reduced the likelihood that such misconduct would have occurred." Id. at 1267. The record here lacks sufficient evidence of any "demonstrably feasible measures" which would have necessarily prevented this accident.[3]
 
 
 17
 The administrative law judge noted that Myers' employees were "highly skilled, experienced linemen who were provided with proper materials and safe equipment" and declared:
 
 
 18
 The facts do not establish that use of the preform type grip in and of itself to tension cable constitutes a hazard, nor has it been shown what respondent failed to provide its employees in order to perform a more safe "clipping-in" operation. While complaint's evidence indicates that the problem of slipping is the danger associated with use of the grip, it has not been shown what other device, if any, assures less slippage. . . .
 
 
 19
 Although the unfortunate occurrence resulted from failure of the preform while being used as a grip, it cannot be concluded from the evidence that respondent failed to provide a place of employment free of recognized hazards. The record contains substantial testimony that respondent's procedure is followed within the industry and is at least as safe as other recognized methods. Several witnesses expressed a preference for the preform grip because less slippage has been experienced, and it had not been known to give way. The evidence clearly shows that there was no superior alternative to the application of the preforms for the pulling-in operation. Therefore, the Secretary has failed to establish that such procedure is a recognized hazard.
 
 
 20
 A hazardous condition did exist while respondent's employee worked within the bight of the angle without safetying the line to the pole and without use of protective equipment. This conduct, which was against respondent's safety rules, coupled with improper use of the preforms, was not shown to be within the employer's knowledge; and he should not be held responsible for such unanticipated actions.
 
 
 21
 "Congress intended to require elimination only of preventable hazards." National Realty and Construction Co., Inc. v. Occupational Safety and Health Review Commission, 160 U.S.App.D.C. 133, 489 F.2d at 1266. Congress did not intend to classify accidents such as the one in this case as "recognized" under the Act.
 
 
 22
 A "recognized hazard" is a "condition that is known to be hazardous, and is known not necessarily by each and every individual employer but is known taking into account the standard of knowledge in the industry." Brennan v. Occupational Safety and Health Review Commission, 501 F.2d 1196, 1201 (7th Cir. 1974). The Secretary has not proven that the dangerous potential of this particular activity was known either to Myers or within the industry. On the contrary, there was sufficient proof both that there was no prior history of any similar accident and that the use of a preform grip to a tension cable was preferred to other methods, within the industry. Thus this activity could not be considered a "recognized hazard."
 
 
 23
 The administrative law judge found in effect that the accident resulted from the decedent's own negligence. The preform grip which had worked well before was not properly and fully attached by the decedent this time. The decedent failed to secure the line separately in case the grip slipped. He failed to use his own safety equipment. Most critically, he knowingly assumed the unnecessary risk of working inside the bight of a line under tension. Unused grips and a different type of grip were available for the linemen at the site. Myers had a full-time safety director and an adequate safety program. This accident resulted from the decedent's negligence and bad judgment, not from the employer's neglect of its general duty.
 
 
 24
 After examining the record as a whole, we have no dispute with the facts found by the law judge. The findings are supported by substantial evidence and are thus conclusive. 29 U.S.C. § 660(a). We do not view the Commission's split decision permitting the law judge's reasoned decision to stand as being "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Marshall v. Cities Service Oil Co., 577 F.2d 126, 130-131 (10th Cir. 1978).
 
 
 25
 Affirmed.
 
 
 
 *
 This appeal was originally decided by an unreported order on November 21, 1978. See Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion
 
 
 [1]
 The citation alleged:
 The employer failed to furnish his employees working on the Callahan-Yulee power line construction job site near Yulee, Florida a place of employment free of recognized hazards that were causing or likely to cause death or serious physical harm to his employees, in that employees were allowed to use "Preforms" manufactured by Preformed Line Products Company of Cleveland, Ohio in an application for which they were not designed specifically a "clipping in" operation, in contravention of the manufacturers published application procedures on May 17, 1975, exposing employees to the hazard of serious injury or death.
 
 
 [2]
 In one out of every six cartons of preform grips a brochure in the packing instructs, Inter alia, that the product "should not be used as tools; that is come-alongs, pulling grips, etc." A Preformed Line Products Co. employee testified that his company is the largest supplier of preform type products with approximately 60 to 70 per cent of the U. S. market and that the instructions have not been contained in every carton since 1972 because "these products were so widely known and widely used, and the industry having been around for so long, that the instructions were almost superfluous. . . ."
 
 
 [3]
 On appeal the Secretary belatedly claims that a third kind of grip, the "chance" grip, should have been used. This assertion is unsupported in the record