645 F.2d 1096
 207 U.S.App.D.C. 171, 9 O.S.H. Cas.(BNA) 1362,
1981 O.S.H.D. (CCH) P 25,224
 WHIRLPOOL CORPORATION, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent,
and
Ray Marshall, Secretary of Labor, Respondent.
WHIRLPOOL CORPORATION, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION et al., Respondents.
 Nos. 79-1692, 80-2426.
 United States Court of Appeals,
District of Columbia Circuit.
 March 12, 1981.
 
 Opinion After Remand
 Robert E. Mann and Willis J. Goldsmith, Washington, D. C., were on the brief for petitioner. Zachary D. Fasman, Washington, D. C., also entered an appearance for petitioners.
 Dennis K. Kade, Asst. Counsel, and Thomas L. Holzman, Atty., Dept. of Labor, Washington, D. C., were on the brief for respondent. Allen H. Fedman, Atty., Dept. of Labor, Ronald R. Glancz and Marleigh Dover Lang, Attys., Dept. of Justice, Washington, D. C., also entered an appearance for respondent.
 Before BAZELON, Senior Circuit Judge, and TAMM and WILKEY, Circuit Judges.
 Opinion for the Court filed by Senior Circuit Judge BAZELON.
 BAZELON, Senior Circuit Judge:
 
 
 1
 The Occupational Safety and Health Act of 1970[1] (OSHA) employs two devices to protect workers from the unconscionably high risk[2] of tragic death or injury: regulations, which define safety standards for specific industrial environments; and, a catch-all "general duty" clause[3] which requires employers to abate "recognized hazards" in the workplace.[4] As this court recognized in National Realty & Constr. Co. v. OSHRC,[5] the laudable and sweeping mandate of the general duty clause must be focused through clear notice of any specific hazard, in order to ensure fairness to employers and open, reasoned decisionmaking by OSHRC (the "Commission").
 
 
 2
 As the Commission acknowledges, the Secretary of Labor's (the "Secretary") citation here provided Whirlpool Corp. (the "petitioner") with inadequate written notice of the alleged general duty violation, and the evidence presented at the administrative hearing was not a "model of precision."[6] The predictable result of these haphazard procedures was a poorly developed record which fails to support OSHRC's findings. Because we cannot discern whether this lack of evidence reflects the confusion caused by the Secretary's procedures rather than an unmeritorious charge, we must remand this record for further development.
 
 I. THE GENERAL DUTY CLAUSE
 A. Substantive Elements
 
 3
 Section 654(a)(1) of OSHA, the general duty clause, provides that
 
 
 4
 (a) Each employer
 
 
 5
 (1) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.[7]
 
 
 6
 As OSHA's legislative history makes clear,[8] this subsection does not impose strict liability on employers, but instead limits their liability to "preventable hazards."[9] The three elements of a general duty violation are: (1) a hazard likely to cause death or serious bodily harm; (2) recognition of the hazard either by the specific employer or generally within the industry; and (3) existence of a feasible method of abatement.[10]
 
 
 7
 The Secretary has the burden of coming forward with evidence on the feasibility issue.[11] This procedural burden is closely related to the broad sweep of the clause,[12] for proof of the specific method of abatement, perhaps more than the other substantive elements, helps provide the employer with notice of the precise hazard at issue.
 
 B. Notice requirement
 
 8
 Section 658 of OSHA provides that an employer charged under the general duty clause must be given notice in the form of a citation which "shall be in writing and shall describe with particularity the nature of the violation ... (and) shall fix a reasonable time for the abatement of the violation."[13]
 
 
 9
 Ideally, the citation should provide the employer with notice of the Secretary's contentions pertinent to each of the three elements underlying a general duty violation. Where detailed prehearing notice has been lacking, the reviewing court must carefully scrutinize the Secretary's presentation of evidence to ensure that the cited employer has been afforded a fair opportunity to address the specific violation charged.[14] As this court found in National Realty, the virtues of adequate notice extend even beyond due process: "To assure that citations issue only upon careful deliberation, the Secretary must be constrained to specify the particular steps a cited employer should have taken to avoid citation, and to demonstrate the feasibility and likely utility of those measures."[15]
 
 
 10
 II. PROCEDURAL HISTORY OF THE INSTANT VIOLATION
 
 
 11
 Petitioner manufactures appliances at its Marion, Ohio plant. Overhead conveyors move parts through the manufacturing process. To protect employees working beneath the conveyors from falling parts, petitioner maintains a huge protective guard screen, which consists of multiple steel mesh panels secured by metal clips to angle iron frames, which are joined together by bolts. Maintenance personnel routinely traverse the guard screen to retrieve fallen parts.
 
 
 12
 In years prior to the instant violation, maintenance personnel fell partially through the guard screen. In 1974, an employee fell to his death when the bolts joining two frames failed.[16] After an OSHA compliance officer's inspection, petitioner was cited for: "failure to provide a safe walking and working surface on the screens under the conveyor."[17] The citation further required "immediate" abatement.[18] Petitioner contested the citation.
 
 
 13
 At the hearing, the Secretary offered the testimony of employees who described occasions on which workers had fallen partially through the screen. The Secretary's compliance officer refused to specify whether the source of the hazard was the bolts linking the panel frames or the tensile strength of the screen mesh.[19] A civil engineer testified for the Secretary, and suggested a third theory of the hazard: the absence of a heavy steel catwalk.[20] Petitioner's engineer testified on cross-examination that one-third of the screen's panels had been replaced by heavier gauge mesh, but he added that complete replacement was architecturally infeasible.[21]
 
 
 14
 The Administrative Law Judge ("ALJ") vacated the citation without deciding whether the Secretary had proven a general duty clause violation.[22] OSHRC remanded the matter to the ALJ for findings under the general duty clause. One Commissioner dissented from the remand order, however, on the grounds that the Secretary had failed to specify or prove a feasible abatement method.[23]
 
 
 15
 On remand, the ALJ again dismissed the citation, this time on the grounds[24] that the record did not reveal a feasible abatement method.[25] The ALJ assumed[26] that the hazard contemplated by the Secretary was the tensile strength of the screen panels. However, the ALJ accepted the unrefuted testimony of petitioner's expert, who stated that complete screen panel replacement was infeasible.
 
 
 16
 OSHRC again overruled the ALJ. The Commission was admirably candid in acknowledging the substantial deficiencies in the notice provided petitioner.
 
 
 17
 (T)he citation failed to specify (what condition rendered the screen unsafe) and accordingly facially lacked particularity. (In addition) a foundation had been laid in the citation for (the Secretary's) own confusion of focus and for (petitioner's) possible misconception of the case, not only by the absence of reference to the (tensile strength of the mesh) as the hazard, but by the requirement of immediate abatement, which most likely suggested abatement by replacing the bolts rather than by replacing a substantial part of the guard screen panels.[27]
 
 
 18
 The Commission concluded that, notwithstanding the confusion precipitated by its citation, the "purposes of the particularity requirement (were) fulfilled in subsequent stages of the proceeding." Although the "Secretary's evidence at the hearing was not a model of precision in identifying the hazard,"[28] the Commission found that repeated reference to the strength of the steel mesh gave petitioner constructive notice of the hazard. Moreover, according to the Commission, petitioner apparently perceived that the tensile strength of the screens was the hazard, for it introduced rebuttal evidence on this point.
 
 
 19
 The Commission also rejected the ALJ's findings regarding the lack of evidence on the feasibility issue.[29] The Commission relied on the "record as a whole,"[30] and specifically: (1) the testimony of petitioner's engineer that heavier gauge screens were safer;[31] and, the testimony of petitioner's employees, who acknowledged that heavier screen panels were typically deployed to replace screens that had torn. The Commission concluded
 
 
 20
 Because Whirlpool systematically was replacing the mesh panels with heavy duty wire throughout the plant, the feasibility of the heavy duty wire to eliminate the hazard and its likely utility in Whirlpool's plant is apparent.[32]
 
 
 21
 The Commission reversed the findings of the ALJ, and amended the citation to provide an abatement period of six months.[33] This appeal followed.III. NOTICE AND EVIDENCE OF A FEASIBLE ABATEMENT METHOD
 
 A. Notice
 
 22
 OSHRC points to employees' references to the guard screen panels and to rebuttal testimony on the tensile strength of the screen as evidence that petitioner had adequate notice of the hazard. In so doing, the Commission ignores the importance of detailed notice to the fair administration of the general duty clause.
 
 
 23
 Assuming arguendo that petitioner's rebuttal suggests a general awareness of the hazardous condition,[34] it hardly follows that the Secretary ever gave petitioner a fair opportunity to address a necessary and independent issue: how the hazard could have been feasibly abated. The Commission acknowledges that there was no written notice. Nor was there constructive notice, for no witness outlined "the Secretary's own theory of what steps the (petitioner) should have taken to abate the hazard."[35] The Secretary's compliance officer addressed the subject of abatement only on cross-examination, and he pointedly refused to reveal the Secretary's abatement plan.[36] The Secretary's engineer did not even address abatement. Of course, the Commission's post-hearing alteration of the citation clarified the hazard charged, but came far too late to provide petitioner with a fair opportunity to meet the Secretary's contentions.
 
 B. Substantial Evidence
 
 24
 The substantial evidence rule requires a court reviewing an administrative adjudication to accept findings of fact supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[37] As tolerant as this standard is, the vague notice and unfocused evidence offered by the Secretary at the hearing has resulted in a record devoid of support for OSHRC's conclusion.
 
 
 25
 Although some witnesses called by the Secretary testified to the efficacy of the heavier gauge screen, none addressed the feasibility of complete screen panel replacement.[38] On cross-examination, petitioner's engineer, after noting that one-third of the panels had been replaced before the fatality, stated that complete panel replacement was architecturally infeasible. In view of his unrefuted testimony, it is by no means "apparent" that complete replacement was a feasible means of abating the hazard.[39]
 
 
 26
 Accordingly, the order of the OSHRC is vacated and the record remanded for further development on the issue of a feasible abatement method.
 
 
 27
 So ordered.
 
 
 
 [1]
 29 U.S.C. § 651 et seq. (1976)
 
 
 [2]
 Prior to OSHA's passage, 14,500 persons were killed and 22 million were disabled annually as a result of industrial accidents. See generally S.Rep.No.91-1282, Labor and Public Welfare Committee, 91st Cong., 2d Sess., 1970, U.S.Code Cong. & Admin.News 5177-81. The staggering record of human suffering associated with just one occupational disease, byssinosis, is recounted in AFL-CIO v. Marshall, 617 F.2d 636 (D.C.Cir.1979), vacated and remanded, --- U.S. ----, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980)
 
 
 [3]
 29 U.S.C. § 654(a)(1) (1976)
 
 
 [4]
 Id. The text of the subsection is reprinted in text at Part I(A) infra
 
 
 [5]
 489 F.2d 1257 (D.C.Cir.1973)
 
 
 [6]
 Joint Appendix ("J.A.") 43
 
 
 [7]
 29 U.S.C. § 654(a)(1) (1976)
 
 
 [8]
 See 116 Cong.Rec. 38377 (Nov. 23, 1970) (recognition requirement intended to mitigate employer liability); H.R.Rep.No.91-1291, Committee on Educ. & Labor, 91st Cong., 2d Sess. 21 (employer's duty "not absolute," but instead limited to protecting workers from "preventable dangers"). Although the employer's duty under OSHA extends beyond that imposed under common law, see Morey, The General Duty Clause of the Occupational Safety and Health Act of 1970, 86 Harv.L.Rev. 988 (1973), it must be "achievable and not a mere vehicle for strict liability." National Realty & Constr. Co. v. OSHRC, supra, 489 F.2d at 1266 n.36
 
 
 [9]
 H.R.Rep.No.91-1291, supra note 8, at 21
 
 
 [10]
 See, e. g., Titanium Metals Corp. v. Usery, 579 F.2d 536 (9th Cir. 1978); Empire-Detroit Steel Div. v. OSHRC, 579 F.2d 378 (6th Cir. 1978); I. T. O. Corp. v. OSHRC, 540 F.2d 543 (1st Cir. 1976); National Realty & Constr. Co. v. OSHRC, supra
 
 
 [11]
 See, e. g., Bristol Steel & Iron Works v. OSHRC, 601 F.2d 717, 723 (4th Cir. 1979); Champlin Petroleum Co. v. OSHRC, 593 F.2d 637, 640 (5th Cir. 1970); Titanium Metals Corp. v. Usery, 579 F.2d 536, 543 (9th Cir. 1978); National Realty & Constr. Co. v. OSHRC, supra
 
 
 [12]
 "Since the general duty clause is so broad, the evidence to support a charge of violation should be specific and detailed." Brennan v. OSHRC (Canred Indust.), 502 F.2d 946, 952-53 (3d Cir. 1974)
 
 
 [13]
 29 U.S.C. § 658(a) (1976)
 
 
 [14]
 As we noted in National Realty & Constr. Co. v. OSHRC, supra, administrative pleadings may be liberally construed, "so long as fair notice is afforded...." 489 F.2d at 1264 (emphasis added). See, e. g., General Elec. Co. v. OSHRC, 540 F.2d 67, 69 (2d Cir. 1976)
 
 
 [15]
 489 F.2d at 1268
 
 
 [16]
 J.A. 36. Because the instant citation was precipitated by this tragedy, petitioner had reason to believe, absent further clarification from the Secretary, that it was the bolts, not the tensile strength of the mesh, that was the hazardous condition. This ambiguity was compounded by the citation itself. See J.A. 43
 
 
 [17]
 J.A. 2
 
 
 [18]
 Id
 
 
 [19]
 J.A. 72-78, 104-05
 
 
 [20]
 J.A. 208-09
 
 
 [21]
 The engineer's testimony is summarized first by Commissioner Moran, J.A. 29, dissenting from remand, and again by the ALJ, J.A. 32-33
 
 
 [22]
 The ALJ found that a specific OSHA regulation, rather than the general duty clause, governed the instant citation. J.A. 19-20
 
 
 [23]
 J.A. 26-30
 
 
 [24]
 J.A. 31
 
 
 [25]
 See National Realty & Constr. Co. v. OSHRC, supra, 489 F.2d at 1268:
 Only by requiring the Secretary, at the hearing, to formulate and defend his own theory of what a cited defendant should have done can the Commission and the courts assure even-handed enforcement of the general duty clause.
 (emphasis in original).
 
 
 [26]
 This assumption correctly anticipated the Commission's theory of the hazard. See J.A. 46
 
 
 [27]
 J.A. 43
 
 
 [28]
 Id
 
 
 [29]
 In addition to the absence of evidence on the feasibility issue offered by the Secretary, the ALJ noted disparities in the credibility of the parties' witnesses. The compliance officer did not test the tensile strength of the various panels used in the guard screen, and the Secretary's engineer admitted that he had no experience with guard screen systems. On the other hand, petitioner's engineer was not only familiar with the special characteristics of petitioner's screen, but was also generally acquainted with guard screen structures. J.A. 28-29
 
 
 [30]
 J.A. 47
 
 
 [31]
 Id
 
 
 [32]
 J.A. 48
 
 
 [33]
 J.A. 49. Post-hearing alterations of the citation can signal deficiencies in the notice afforded respondents, e. g., General Elec. Co. v. OSHRC, 540 F.2d 67, 69 (2d Cir. 1976). In this instance, alteration of the citation resolved an ambiguity in the precise hazard charged, see text accompanying note 27 supra. It would appear, however, that this ambiguity should have been resolved before or at least during the hearing to provide petitioner with a full and fair opportunity to meet the Secretary's charge
 
 
 [34]
 Petitioner's rebuttal may represent an attempt to counter whatever unfocused allegations were made at the hearing, rather than evidence of fair notice. Cf. 3 Moore's Federal Practice P 15.13(2) at 15-175:
 Implied consent to the trial of an unpleaded issue is not established merely because evidence on that issue was introduced.... It must appear that the parties understood the evidence was aimed at the unpleaded issue.
 
 
 [35]
 National Realty & Constr. Co. v. OSHRC, supra, 489 F.2d at 1268
 
 
 [36]
 Q. Are you saying that the Secretary would agree that the wire, the heavy duty wire type does comply....?
 A. No Sir, I am not saying that.
 Q. You're saying it does not comply?
 A. I'm not saying it does and I'm not saying it does not comply.
 J.A. 73.
 
 
 [37]
 See, e. g., Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)
 
 
 [38]
 E. g., J.A. 104
 
 
 [39]
 J.A. 48
 At oral argument, counsel for petitioner noted that subsequent to the hearing, all of the guard screen panels have been replaced.
 OSHRC does not contend, however, that this disposes of the feasibility issue. As the Commission indicated in response to an initial remand from this court, eventual compliance with an abatement order does not moot the original citation, and our review of that citation is based on the record which purportedly supported it.
 The general duty clause's focus on preventable hazards, see note 9 supra, limits liability to dangers actually or constructively recognized at the time of the violation, see, e. g., Marshall v. L. E. Myers Co., 589 F.2d 270 (7th Cir. 1978). It would appear, then, that the feasibility of abatement must be judged as of the time of the violation as well. We cannot discern from this record whether petitioner's apparently recent success in abating the hazard contradicts the testimony on feasibility of abatement recorded at the 1975 hearing.