**L.R. WILLSON AND SONS, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Raymond J. Donovan, Secretary of Labor, United States Department of Labor, Respondents.**

**Raymond J. DONOVAN, Secretary of Labor, Petitioner,**

v.

**L.R. WILLSON AND SONS, INC., and Occupational Safety and Health Review Commission, Respondents.**

Nos. 81–2101, 81–2385.

United States Court of Appeals, District of Columbia Circuit.

Argued May 19, 1982.

Decided Jan. 18, 1983.

Arthur J. Amchan, Atty., Dept. of Labor, Washington, D.C., with whom Allen H. Feldman, Atty., Dept. of Labor, Washington, D.C., was on the brief for Donovan, Secretary of Labor, et al., respondents in 81–2101 and cross-petitioner in 81–2385. Edward G. Hoban and Dennis K. Kade, Attys., Dept. of Labor, Washington, D.C., also entered appearances for Donovan, Secretary of Labor, et al.

Gary Z. Nothstein, Baltimore, Md., with whom Ronald W. Taylor, Baltimore, Md., was on the brief, for L.R. Willson and Sons, Inc., petitioner in 81–2101 and respondent in 81–2385.

Before MacKINNON, GINSBURG and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge.

These are cross appeals from a final order of the Occupational Safety and Health Review Commission ("OSHRC" or the "Commission") affirming an Administrative Law Judge decision to affirm one of two Occupational Safety and Health Act ("OSHA" or the "Act")[1] citations issued against the structural steel erection company of L.R. Willson and Sons, Inc. ("Willson"). For the following reasons, we reverse the Commission decision regarding each of the citations in question.

## I. BACKGROUND

Willson is a structural steel erection company based in Annapolis, Maryland. In March, 1980, Willson was engaged in building a gymnasium-racquetball court at 8260 Greensboro Drive in McLean, Virginia. (JA 64, 85, 101). On March 26, the worksite was inspected by OSHA Compliance Officer Lillie M. Browne. At the time of the inspection, Willson was working only on the com-

---

1. 29 U.S.C. § 651 *et seq.* (1976 & Supp. IV 1980).

pletion of the roof of the single story north racquetball court, performing the steel assemblage of joists[2] and frames[3] for the support of roof top units/air-handlers, welding roof joists, and fastening and bolting steel members. (JA 29–30, 102–04, 106). The structural steel framework of the building contained vertical columns placed one on top of another and bolted together. Horizontal beams and cross braces completed the framework. (JA 71, 104–05). The framework also contained interior columns, braces, and bar joists. (JA 102, 104, 107).

Upon inspection, Browne observed two employees *sitting* on the joists of the building's uncompleted roof performing various welding tasks approximately 24 feet above the ground. Neither workman was wearing a safety belt of any kind. (JA 29–31, 35, 124). Browne also observed an employee descending a 24 foot high ladder which was perpendicular to the floor. This ladder, which was the normal means of employee access to the roof, was not equipped with a cage or well nor with side or grab rails extending above the roof. (JA 38–47).

Based on this inspection, Browne issued citations for two "serious"[4] violations of the Occupational Safety and Health Act. With respect to the "welding workmen," Browne charged Willson with violating 29 C.F.R. 1926.28(a) (1981),[5] the general regulation which provides:

The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to the employees.

As for the ladder without cage or grab rails, Browne cited Willson for violating 29 C.F.R. 1926.450(a)(5) (1981),[6] which provides:

Fixed ladders shall be in accordance with the provisions of the American National Standards Institute ["Institute"], A 14.3–1956, Safety Code for Fixed Ladders.

Section 6.1.2 of the Institute Code provides:
Cages or wells . . . shall be provided on ladders of more than 20 feet to a maximum unbroken length of 30 feet.

Section 6.3 of the Institute Code provides:
The side rails of through or side-step ladder extensions shall extend 3½ feet above parapets and landings.

---

**2.** A joist is a horizontally-placed steel beam set from wall to wall to support a floor, ceiling or roof.

**3.** A frame is a steel foundation for air handling units which is affixed to bar joists.

**4.** Under the Act, a serious violation
shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.
29 U.S.C. § 666(j) (1976).

**5.** The citation reads:
29 C.F.R. 1926.28(a): Appropriate personal protective equipment was not worn by employee(s) in all operations where there was exposure to hazardous conditions:
(a) Roof, North Racquet Ball Court—Employees welding I-beams to roof joists were not wearing safety belts and lanyards where there existed a hazard of falling approximately 24 feet to concrete deck, on 3/26/80. (JA 4).

**6.** The citation reads:
29 C.F.R. 1926.450(a)(5) Section 6.3 American National Standards Institute, A 14.3–1956, Safety Code for Fixed Ladders, as adopted by 29 C.F.R. 1926.450(a)(5): The side rails of fixed ladder(s) did not extend 3½ feet above the landing or parapet wall:
(a) Exterior Wall of Gymnasium, South Entrance to Racquet Ball Court—The side rails of a 24 foot fixed metal ladder extended only approximately ½-inch above the landing, on 3/26/80.
29 C.F.R. 1926.450(a)(5) Section 6.1.2 American National Standards Institute, A 14.3–1956, Safety Code for Fixed Ladders, as adopted by 29 C.F.R. 1926.450(a)(5): Cages or wells were not provided on ladders of more than 20 feet in unbroken length:
(a) Exterior Wall, Gymnasium, South Entrance to Racquet Ball Court—A cage or well was not provided on a 24 foot fixed metal ladder which was in use, on 3/26/80. (JA 4).

Willson contested these citations before an Administrative Law Judge, who, after an evidentiary hearing, affirmed the citation issued for violation of 29 C.F.R. 1926.-28(a) (1981) and vacated the citation for violation of 29 C.F.R. 1926.450(a)(5) (1981). Both Willson and the Secretary of Labor petitioned OSHRC for review of the respective adverse portions of the Administrative Law Judge's report. However, no member of the Commission directed that the report be reviewed by the Commission and on August 26, 1981, the order by virtue of such inaction became a final order of the Commission pursuant to section 12(j) of OSHA, 29 U.S.C. § 661(i) (Supp. IV 1980).[7]

On October 12, 1981, Willson filed a petition for review of the OSHRC final order with this Court, which was assigned Docket No. 81–2101. On October 22, 1981, the Secretary filed a petition for review of the OSHRC final order with the United States Court of Appeals for the Fourth Circuit. Pursuant to 28 U.S.C. § 2112(a) (1976),[8] that proceeding was transferred to this Court on December 29, 1981, and was assigned Docket No. 81–2385. The two cases were thereafter consolidated.

## II. THE "WELDING WORKMEN"

Willson challenges the section 1926.28(a) citation by arguing that section 1926.28(a), a "general construction industry regulation," is preempted by 29 C.F.R. 1926.750(b) (1981), a "specific" regulation imposing safety provisions on the structural steel erection industry. Accordingly, Willson asserts that section 1926.28(a) may not be used as the basis for a citation issued to Willson. Alternatively, Willson argues that the Commission erred in affirming the section 1926.28(a) citation because the Secretary did not demonstrate that a reasonably prudent employer familiar with the structural steel erection industry would have required its workers to use safety belts at the gymnasium-racquetball court construction site.[9] Although we conclude that the specific safety regulation, section 1926.-750(b), does not preempt application of the general safety regulation, section 1926.-28(a), to the structural steel erection industry under the circumstances presented by this case, we hold that the Commission's finding of a violation of section 1926.28(a) is not supported by substantial evidence in the record.

7.  29 U.S.C. § 661(i) (Supp. IV 1980) provides:
    A [sic] administrative law judge appointed by the Commission shall hear, and make a determination upon, any proceeding instituted before the Commission and any motion in connection therewith, assigned to such administrative law judge by the Chairman of the Commission, and shall make a report of any such determination which constitutes his final disposition of the proceedings. The report of the administrative law judge shall become the final order of the Commission within thirty days after such report by the administrative law judge, unless within such period any Commission member has directed that such report shall be reviewed by the Commission.

8.  28 U.S.C. § 2112(a) (1976) provides:
    If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer

them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.

9.  Willson also suggests that section 1926.28(a) violates due process because it does not provide a sufficient standard to guide employers as to the steps that are necessary for compliance with its requirements. Courts, however, have avoided this constitutional question by construing section 1926.28(a) to require only those steps that a "reasonable person" would take under the circumstances. *S & H Riggers & Erectors, Inc. v. OSHRC*, 659 F.2d 1273, 1285 (5th Cir.1981); *Ray Evers Welding Co. v. OSHRC*, 625 F.2d 726, 731–32 (6th Cir.1980); *Bristol Steel & Iron Works, Inc. v. OSHRC*, 601 F.2d 717, 722 (4th Cir.1979). We also construe section 1926.28(a) to include a "reasonable man" limitation on its requirements and therefore need not address Willson's constitutional argument. *See* note 17 *infra*.

## A. Preemption

This Court recently considered Willson's preemption argument in a case involving two other OSHA citations issued to Willson. In *L.R. Willson & Sons v. Donovan*, 685 F.2d 664 (D.C.Cir.1982), we rejected Willson's claim that the mere presence of a specific safety regulation for an industry rendered inapplicable a general safety regulation that would, but for the specific regulation, apply to the industry under the circumstances. "A general standard is not preempted unless a specific standard sets forth the measures that an employer must take to protect employees from a particular hazard." *Id.* at 670.[10] Thus, we must determine whether section 1926.750(b) sets forth, to the exclusion of the measures required under section 1926.28(a), all the measures that Willson was required to implement to protect its workers from the hazard of falling 24 feet from the steel beams on which they were working to the concrete floor below. We hold that it does not.

Section 1926.750(b)[11] provides that temporary floors must be provided within two stories or 30 feet, whichever is less, whenever steel erection work is being done.[12] If a building or structure is not adaptable to a temporary floor, then a scaffold must be provided. Should neither a floor nor scaffolding be practicable, a safety net must be provided whenever the potential fall distance exceeds two stories or 25 feet. We read section 1926.750(b) as establishing the measures required of employers engaged in the erection of structural steel to reduce the exposure of workers to falls of more than 30 feet. However, in our view section 1926.750(b) was not intended to relieve such employers of their general obligation, expressed in section 1926.-28(a), to take appropriate measures to protect workers from hazardous falls of less than 30 feet.[13]

The Fourth Circuit reached the same conclusion in an opinion by Judge Field, *Bristol Steel & Iron Works, Inc. v. OSHRC*, 601 F.2d 717 (4th Cir.1979). Bristol was assembling a scaffolding preparatory to the erection of structural steel. Two employees

---

**10.** This result derives from a reading of 29 C.F.R. 1910.5(c)(1) (1980) (emphasis added), which defines the applicability of OSHA standards:

> If a particular standard is *specifically applicable* to a condition, practice, means, method, operation or process, it shall prevail over any different general standard which might otherwise be applicable to the same condition, practice, means, method, operation or process.

As this Court noted in *L.R. Willson & Sons v. Donovan, supra*, 685 F.2d at 669:

> We think it clear from the plain language employed in section 1910.5(c) that the general standards apply to all hazards native to the steel erection industry unless a specific standard . . . sets forth a different mandatory or preferred method for protecting against the particular hazard in question.

*See also McLean-Behm Steel Erectors, Inc. v. OSHRC*, 608 F.2d 580, 581 (5th Cir.1979) (emphasis added) ("When specific standards *are applicable to given factual circumstances,* they supersede general safety regulations and control").

**11.** 29 C.F.R. § 1926.750(b) (1981) provides:

*Temporary flooring—skeleton steel construction in tiered buildings.*

. . . .

(1)(ii) On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet. The nets shall be hung with sufficient clearance to prevent contacts with the surface of structures below.

. . . .

(2)(i) Where skeleton steel erection is being done, a tightly planked and substantial floor shall be maintained within two stories or 30 feet, whichever is less, below and directly under that portion of each tier of beams on which any work is being performed, except when gathering and stacking temporary floor planks on a lower floor, in preparation for transferring such planks for use on an upper floor. Where such a floor is not practicable, paragraph (b)(1)(ii) of this section applies.

. . . .

**12.** For the purposes of this provision, a concrete floor is an acceptable substitute for a temporary floor. *Builders Steel Co. v. Marshall,* 622 F.2d 367, 370 (8th Cir.1980).

**13.** Willson does not dispute the conclusion of the Administrative Law Judge that a fall of 24 feet to a concrete floor "could cause serious physical harm or even death." (JA 127).

were observed by an OSHA inspector on a wall, approximately 16 feet above some concrete stairs, without any fall protection. Accordingly, Bristol was cited for a violation of section 1926.28(a). *Id.* at 719. Bristol contested the citation, arguing that the specific structural steel safety regulation, section 1926.750(b), preempted application of section 1926.28(a) to its activities. *Id.* at 720–21.

The Fourth Circuit rejected Bristol's argument. *Id.* at 722. Recognizing that OSHA should be liberally construed to provide protection to workers, the court concluded that the general safety regulation was "designed to fill those interstices necessarily remaining after the promulgation of specific safety standards." *Id.* at 721 (footnote omitted).

> The *specific standards* relied upon by Bristol, *while providing safety protection to employees engaged in steel erection, cannot achieve the goal of adequately protecting those employees in every conceivable situation.* Infinite hypotheticals can be envisioned in which employees engaged in steel erection would be exposed to an unnecessary hazard not covered by a ... specific safety standard. *The general safety standard* dealing with personal protective equipment found in 29 C.F.R. § 1926.28(a) *complements the ... specific standards dealing with steel erection. ...*

*Id.* (emphasis added).

■ We find the reasoning of the Fourth Circuit persuasive. Willson, in essence, argues that the Secretary eliminated the general obligation of structural steel employers to protect their workers from the considerable hazard of falls less than 30 feet simply by specifying the measures required to protect such workers from the hazard of falls greater than 30 feet. Nothing in the Act

requires the Secretary to establish specific safety regulations for all hazards in a particular industry, or to leave workers in that industry unprotected from such hazards, in order to specify measures required to protect workers from a particular hazard in the industry. *See id.* at 721 n. 11. The general obligation of an employer to protect his employees from a recognized hazard of the workplace [14] remains until the Secretary establishes specific safety requirements to protect workers from that hazard, or issues regulations which indicate that workers are to remain unprotected from that hazard. *See L.R. Willson & Sons v. Donovan, supra,* 685 F.2d at 670.

Section 1926.750(b) does not specify the measures required of employers to protect workers in the structural steel industry from hazardous falls of less than 30 feet and it is beyond question that falls of less than 30 feet can cause "serious physical harm." Accordingly, the scheme of the regulations permitted the Secretary to cite Willson for a violation of section 1926.28(a) for failing to protect its workers from the risk of a hazardous fall of 24 feet.[15] It is therefore necessary to determine whether the Commission's order affirming the section 1926.28(a) citation issued to Willson is supported by substantial evidence in the record. We conclude that it is not.

### B. *Substantial Evidence*

Our review of the Commission's order affirming the section 1926.28(a) citation issued to Willson is limited to determining whether that order is supported by substantial evidence in the record. 29 U.S.C. § 660(a) (1976). We are required "to accept [the Commission's] findings of fact [if] supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Whirlpool Corp. v. OSHRC,* 207 U.S.App.D.C. 171, 176, 645 F.2d 1096, 1101 (1981).

---

14. The general duty clause of the Act, 29 U.S.C. § 654(a)(1) (1976), provides:

Each employer—
   (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees ....

15. *Cf. Builders Steel Co. v. Marshall,* 622 F.2d 367, 369–70 (8th Cir.1980) (section 1926.-750(b)(2)(i) requiring floor within two stories or 30 feet of workplace, whichever is less, preempts application of general regulation, 29 C.F.R. 1926.105(a) (1981), requiring use of safety nets within 25 feet of workplace, to structural steel industry).

To establish a violation of the general safety regulation, section 1926.28(a), the *Secretary* must prove [16] that a reasonably prudent employer familiar with the circumstances of the industry would have protected against the hazard in the manner specified by the Secretary's citation. *Ray Evers Welding Co. v. OSHRC,* 625 F.2d 726, 731 (6th Cir.1980).[17] Accordingly, in this case the Secretary was required to prove that a reasonably prudent employer familiar with the structural steel erection industry would have protected its workers from the hazard of falling 24 feet by requiring the use of safety belts. *See Bristol Steel & Iron Works, Inc. v. OSHRC, supra,* 601 F.2d at 723. Courts require the Secretary to provide more than mere proof of the existence of a potential hazard to meet his burden. The Secretary must provide evidence *from persons qualified to express such opinions* [18] that, absent the specified protective equipment, the hazard was likely to occur; [19] that use of the specified protective equipment would not create new hazards for workers; [20] and that use of the specified protective equipment was feasible under the circumstances at issue.[21] Our review of the record in this case reveals that the Secretary failed to meet this burden of proof and that the order of the Commission affirming the section 1926.28(a) citation is not supported by substantial evidence.

The Secretary of Labor's only witness was Compliance Officer Browne. She testified that in her opinion it was feasible for the "welding workmen" to have used safety belts and to have tied those belts to the beams on which they were working. (JA 35, 89). The only evidence she offered to support her conclusion was her later observation that Willson employees were using safety belts while welding a scaffolding underneath the area where the alleged violation occurred. However, Browne was unable to identify what these workers' belts were tied to at that time. (JA 87–88).

16. 29 C.F.R. § 2200.73(a) (1981) provides:
In all proceedings commenced by the filing of a notice of contest, the burden of proof shall rest with the Secretary.
*See L.R. Willson & Sons v. Donovan, supra,* 685 F.2d at 673; *National Realty & Constr. Co. v. OSHRC,* 160 U.S.App.D.C. 133, 139, 489 F.2d 1257, 1263 (1973).

17. Courts considering the constitutionality of section 1926.28(a) have upheld its validity, but only after carefully limiting its scope. The Fifth Circuit reads section 1926.28(a) to require only that employers conform to industry standards:
We ... require only those protective measures which the knowledge and experience of the employer's industry, which the employer is presumed to share, would clearly deem appropriate under the circumstances.
*B & B Insulation, Inc. v. OSHRC,* 583 F.2d 1364, 1367 (5th Cir.1978). However, most Circuits which have considered the question have adopted some form of "reasonable employer" standard:
[T]he appropriate inquiry is whether under the circumstances a reasonably prudent employer familiar with steel erections would have protected against the hazard of falling by the means specified in the citation.
*Bristol Steel & Iron Works, Inc. v. OSHRC, supra,* 601 F.2d at 723. *See also Ray Evers Welding Co. v. OSHRC, supra,* 625 F.2d at 731; *American Airlines, Inc. v. Secretary of Labor,* 578 F.2d 38, 41 (2d Cir.1978); *Brennan v. Smoke-Craft, Inc.,* 530 F.2d 843, 845 (9th Cir. 1976); *Cape & Vineyard Div. v. OSHRC,* 512 F.2d 1148, 1152 (1st Cir.1975). We agree with the Fourth Circuit
that the reasonable man test should not be limited to the custom and practice of the industry. While the custom and practice of most industries will adequately protect employees from hazardous conditions, the inquiry must be broad enough to prevent an industry, which fails to take sufficient precautionary measures against hazardous conditions, from subverting the underlying purposes of the Act.
*Bristol Steel & Iron Works, Inc. v. OSHRC, supra,* 601 F.2d at 723.

18. *See Ray Evers Welding Co. v. OSHRC, supra,* 625 F.2d at 733; *Cape & Vineyard Div. v. OSHRC,* 512 F.2d 1148, 1155 (1st Cir.1975).

19. *See Southern Ohio Bldg. Sys., Inc. v. OSHRC,* 649 F.2d 456, 459 (6th Cir.1981); *B & B Insulation, Inc. v. OSHRC,* 583 F.2d 1364, 1372 (5th Cir.1978).

20. *See Irwin Steel Erectors, Inc. v. OSHRC,* 574 F.2d 222, 223 (5th Cir.1978).

21. *See Ray Evers Welding Co. v. OSHRC, supra,* 625 F.2d at 733; *Bristol Steel & Iron Works, Inc. v. OSHRC, supra,* 601 F.2d at 723; *National Realty and Constr. Co. v. OSHRC,* 160 U.S.App.D.C. 133, 144, 489 F.2d 1257, 1268 (1973).

Browne did not inspect the work area, but rather viewed it from the ground, some 20 feet below. (JA 67). Furthermore, no evidence was provided as to the normal practice of the structural steel erection industry with respect to use of safety belts by "welding workmen" straddling beams.[22]

Browne also testified that in her opinion there was a definite hazard to the "welding workmen" because they were holding tools in their hands and, therefore, could not hold themselves to the beams. (JA 31–32). Yet she offered no evidence, such as accident reports or statistics of the industry, to demonstrate the likelihood that the "welding workmen" would, in fact, lose their balance and fall from the beams on which they were sitting. Finally, the Secretary introduced no evidence with respect to any additional risks to the "welding workmen" that might be associated with their use of safety belts.[23]

This sparse record simply does not provide sufficient evidentiary support for the Commission's conclusion that the Secretary had met his burden of proving a violation of section 1926.28(a) by Willson. We are particularly troubled by the total lack of evidence as to the normal practice with respect to the use of safety belts in the structural steel erection industry. Although we do not hold that such industry evidence would in all cases establish what was "reasonable" in the specific circumstances or that such evidence must be introduced in every case in order to find a violation of section 1926.- 28(a),[24] we suggest that evidence of industry use or non-use of safety devices is highly probative of the feasibility and safety of such devices. In the absence of such evidence, the Secretary must provide alternative, probative evidence of the feasibility and safety of protective devices in order to meet his burden of proof that a reasonably prudent employer would have so provided for the protection of his employees.

In this case, the only evidence presented by the Secretary with respect to the feasibility of the use of safety belts by the "welding workmen" was the unsupported conclusion of Compliance Officer Browne, who was relatively inexperienced in inspecting structural steel erection sites.[25] Browne did not closely inspect the work area where the alleged violation occurred, and her later observation of Willson's employees using safety belts when performing unrelated welding tasks is not probative of whether safety belts were feasible for use by the "welding workmen" at the site specified in the citation. Browne simply was not competent to testify as to the feasibility of the use of safety belts by the "welding workmen" at the gymnasium-racquetball court construction site[26] and the evidence she gave was insufficient to meet the Secretary's burden of proof.

It is clear that the evidence presented by the Secretary fails to demonstrate the feasibility of the use of safety belts under the circumstances set forth in the section 1926.- 28(a) citation issued to Willson.[27] Therefore, the Secretary did not meet his burden of proving all elements of Willson's violation of section 1926.28(a). *Ray Evers Welding Co. v. OSHRC, supra,* 625 F.2d at 733; *Bristol Steel & Iron Works, Inc. v. OSHRC, supra,* 601 F.2d at 723; *National Realty & Construction Co. v. OSHRC,* 160 U.S.App. D.C. 133, 144, 489 F.2d 1257, 1268 (1973). That being the case, the record necessarily lacks substantial evidence to support the Commission's affirmance of the section 1926.28(a) citation. *National Realty & Con-*

22. It is doubtful that Browne was qualified to testify as to practices of the structural steel erection industry since her inspection of the gymnasium-racquetball court site was apparently her first inspection of a structural steel erection site. (JA 53–54).

23. There is the possibility, for example, that the lines necessary for use of safety belts might increase the hazard of workers tripping while moving about the beams.

24. *See* note 17 *supra.*

25. *See* note 22 *supra.*

26. *See Ray Evers Welding Co. v. OSHRC, supra,* 625 F.2d at 733.

27. *See* note 5 *supra.*

*struction Co. v. OSHRC, supra,* 160 U.S. App.D.C. at 139, 489 F.2d at 1263. Accordingly, we reverse the Commission's order affirming the section 1926.28(a) citation.

### III. THE "FIXED LADDER"

Section 6(a) of the Occupational Safety and Health Act, 29 U.S.C. § 655(a) (1976), granted authority to the Secretary of Labor to promulgate, as soon as practicable within two years after the effective date of the Act, any so-called "national consensus standard" which would result in improved safety or health for specifically designated employees. As defined in section 3(9) of the Act, 29 U.S.C. § 652(9) (1976), a national consensus standard is:

> any occupational safety and health standard or modification thereof which (1), has been adopted and promulgated by a nationally recognized standards-producing organization under procedures whereby it can be determined by the Secretary that persons interested and affected by the scope or provisions of the standard have reached substantial agreement on its adoption, (2) was formulated in a manner which afforded an opportunity for diverse views to be considered and (3) has been designated as such a standard by the Secretary, after consultation with other appropriate Federal agencies.

The Secretary of Labor is required to comply with stringent and detailed notice requirements, set forth in section 6(b) of the Act, 29 U.S.C. § 655(b) (1976), in order to promulgate any occupational health and safety standard other than a national consensus standard. The rulemaking requirements under section 6(b) require, *inter alia,* publication of any proposed standard in the Federal Register and a public hearing before such proposed rule takes effect.

The ladder regulation at issue in this case, 29 C.F.R. 1926.450(a)(5) (1981), was adopted in 1971, incorporating by reference American National Standards Institute ("Institute") rule A 14.3–1956 as a national consensus standard. In 1974, Institute standard A 14.3–1956 was revoked and superseded by Institute standard A 14.3–1974,

a further set of protection directives dealing with fixed ladders. As of the date of adoption of Institute standard A 14.3–1974, Institute standard A 14.3–1956 ceased to be a national consensus standard within the meaning of section 3(9) of the Act. Notwithstanding this fact, the Secretary has never revised section 1926.450(a)(5) to incorporate Institute standard A 14.3–1974.

Willson was cited for violating section 1926.450(a)(5). Willson contested the citation, arguing that Institute standard A 14.-3–1956 had been revoked, and thus that the citation was invalid. The Administrative Law Judge accepted this argument, and the Commission, *by its failure to exercise discretionary review,* affirmed.

The Secretary challenges the Commission's conclusion that the section 1926.-450(a)(5) citation was invalid, arguing that only the Secretary, and not a private organization such as the Institute, has authority to promulgate, modify, or revoke occupational safety and health standards; that the Institute's revision of its standard concerning fixed ladders was irrelevant to the validity of section 1926.450(a)(5) as an OSHA standard; and that the Secretary complied with all pertinent requirements for the incorporation of Institute standard A 14.3–1956 into an OSHA standard. Willson counters that Institute standard A 14.3–1956 is no longer a national consensus standard and, therefore, may not be the basis for a section 1926.450(a)(5) citation.

The Commission has previously considered the question of whether a regulation based on a national consensus standard remains valid if the underlying standard is later revoked. *Secretary v. Trojan Steel Co.,* 19 O.S.A.H.R.C. 253 (1975). The two Commissioners were divided on the issue, with Chairman Moran holding that the regulation was void because the standard on which it was based was not a national consensus standard on the date of promulgation of the regulation since that standard had been superseded. *Id.* Commissioner Cleary disagreed, stating that section 6(b) did not require the Secretary to revoke a regulation based on a national consensus

standard simply because a private organization changed the standard upon which the Secretary's regulation was based. To so require, he argued, would unlawfully delegate rulemaking power to the private organization. *Id.* at 255–56.

In this case the parties offer arguments in support of each Commissioner's opinion in *Trojan Steel.* Under normal circumstances, we would be required to determine which argument was consistent with the Act. We need not take that step, however, for in arguing that Institute standard A 14.3–1956 is obsolete for the purposes of section 1926.450(a)(5) analysis, Willson in effect argues that Compliance Officer Browne should have evaluated the fixed ladder in question by Institute standard A 14.3–1974, the superseding Institute standard. It is readily seen that this argument does not assist Willson because Willson would have been cited *irrespective of which standard was applied.*

■ Section 3.13 of Institute standard A 14.3–1974 provides that a "cage, well, or ladder safety device shall be provided where a single length of climb is greater than 20 feet but does not exceed 30 feet ...." Section 6.1.2 of Institute standard A 14.3–1956 provides that "[c]ages or wells ... shall be provided on ladders of more than 20 feet to a maximum unbroken length of 30 feet." The two provisions are virtually identical. Thus, any argument that Willson makes contending that there was no OSHA violation is not well founded. Regardless of which standard was in effect, Willson knew or should have known that the ladder in question—being 24 feet in length and without any cage, well or safety device—did not conform to OSHA standards. The issuance of a citation under section 1926.450(a)(5) was thus fully justified. The Commission order vacating the section 1926.450(a)(5) citation issued to Willson is accordingly reversed.

## IV. CONCLUSION

For the foregoing reasons, the citation issued to Willson for violating 29 C.F.R. 1926.28(a) (1981) is reversed, while the citation issued to Willson for violating 29 C.F.R. 1926.450(a)(5) (1981) is affirmed. The final order of the Commission holding *contra* on both points is reversed in its entirety.

*Judgment accordingly.*